The next case for oral argument is People v. Thomas Oakley. I am here today representing Thomas Oakley. He is a middle-aged white male who is presently serving a five-year prison term in a Taylorville prison facility. That is a sentence that was imposed by the Honorable Gene Schwarm upon a finding by Judge Schwarm of guilty of criminal sexual assault. Mr. Oakley was represented by an attorney from Charleston, Illinois by the name of Todd Reardon. Mr. Reardon is a nice, affable young lawyer, and I'm sure he's had plenty of good performances in the past and will in the future, and I'm aiming no harm with what I'm going to say about him here today. But on this particular case, in his representation of Tom Oakley, he prepared for trial and went into trial, to a bench trial on November 25, 2009, with what he considered to be a vulpine strategy that he devised that hinged upon his filing a bill of particulars. And by filing that bill of particulars, limiting the scope of the state's proof in this case to a six-week period of he could do was cross-examine the alleged victim and ask if she could specifically determine and pinpoint a sexual misconduct toward her within that time frame, and that if she couldn't, he would win by virtue of this strategy. You have about 12 pages of trial transcript that is significant. I have excerpted some of it. But in the midst of the trial, he did cross-examine on that theory. He was successful in getting the victim to say she couldn't positively pinpoint any event. And at the close of the evidence, he moved for a directed verdict based upon the filing of the bill of particulars and his strategy and belief that the proofs were so confined by that filing. When he did, you will see in the transcripts, and Mr. Daley used the word, that he appeared, the defense counsel appeared flummoxed when he was told by the state's attorney that, hey, we are not confined by our charging history by virtue of the filing of the bill of particulars. And the state's attorney was right. Now, in any way you put it, flummoxed fits very well. He was surprised. He indicated he was surprised. When he was asked for authority to support his position, he says, I don't know. I'll have to look at Westlaw. And the state's case was already in. I do not believe that I need to dwell on the fact that the first prong of Strickland v. Washington, that being that this performance fell below an objective standard of reasonableness for effective counsel, needs to be dwelled upon, but I'm willing to answer any questions on the first prong if you have them. I would emphasize that reading the 12 pages of the event, Mr. Reardon believed in this defense. And that's important because it gives context to his defense. He would have urged this defense to Mr. Oakley as a reason to waive trial by jury. The evidence at the hearing, at the evidentiary hearing, and by the way, I might say, there is reference in the state's brief to the fact that appellate counsel did not raise this issue on direct appeal. He didn't raise a chronic claim. He didn't raise anything. And they say, you know, it's been forfeited, or I think most judges still use the term waiver. It's been waived. There is no waiver of what we're hearing today because appellate counsel couldn't possibly have raised this issue. There was nothing in the record with regard to why Tom Soakley waived his right to a trial by jury. It necessitated a post-conviction hearing. This is precisely what post-conviction relief is about and why you have evidentiary hearings. We had the testimony of Christina Allen, who is in the courtroom today, the fiance of Thomas Oakley. We had the testimony of Thomas Oakley himself, and we had, of course, the testimony of Mr. Reardon, who was called by the state. Now, I want to say that in most cases like this, you're going to see that the state calls defense counsel, who usually rebuts and disputes certain claims that are made about his ineffectiveness by a defendant who got a bad result, but not in this case. The evidence here is indisputable that Mr. Reardon believed what he went to trial on, an ill-conceived, misrepresented fact of law, that he gave that advice to the defendant, Thomas Oakley, and that he urged Thomas Oakley to waive a trial by jury because he felt as a component of this ill-advised advice, that a component of it was you needed someone that was dispassionate because the evidence of all these events were still going to come in, and you wanted a judge who would have to really bear down and follow the law and avoid considering everything outside that six-week period. Now, if you think about it, it was a great defense if it had any basis in law, and it certainly was a compelling defense when Christina and Tom Oakley met with Mr. Reardon, and he explained it to them. He said, this is why you waive a judge with it, because the judge will hold to what they can prove. You'll see in the testimony of Christine Allen, she says, we left that One minute they were looking at two and a half years of claimed sexual assaults, over 300 sexual assaults, and they left the office with Mr. Reardon saying, here's how we're going to beat all this. We're going to confine it and hone it down. We're going to waive a jury, and we're going to win. And I think Mr. Oakley planned on that. But he was wrong. I mean, not Mr. Oakley. Well, Mr. Oakley, yeah, but Mr. Reardon planned on winning on this strategy. And that's important, too, because the issue when we turn to the second prong of the Strickland test here today, and this is the bone of contention in much of the state's brief, is what is the prejudice prong in Strickland in this case? And I submit to you the state is absolutely wrong when they say all of their arguments dealing with the fact that you have to be able to show a reasonable likelihood that the outcome at the trial would have been different if 12 people would have decided and not the judge. That is not the prejudice prong in this case. And that is because here the issue is structural. It changed the framework of the trial process. It wasn't just there during the trial process. And I've cited you to the McCarter case. It dealt with a defendant who was convinced not to take a bench trial by his lawyer when he wanted a bench trial. And in that case, when he raised the fact, I've been deprived effective assistance at counsel because I wanted a bench trial, the trial judge who heard the case said, I'll find you guilty if you went on a bench trial. You can't prove any prejudice. That doesn't get any more certain than that. But the appellate court saw it for what it was, what it meant. We have a structural area. It doesn't matter whether the outcome would have been different in front of a trial by a jury or a judge. So the issue here is, and Judge Lowley got this issue right. He didn't make a mistake. He got it right and he had to pull back from an earlier judge that dismissed the claim. And he reinstated it and ruled on it. And what he said was, I have to decide whether there's a reasonable likelihood that the defendant would have waived his right to trial by jury if he had not been given the unsound, misrepresented, false and misleading advice by a well-meaning attorney. Now, there was other issues discussed, reasons discussed, things discussed and Reardon talked about. They talked about the emotional nature of jurors and how they tend to be very They talked about the concern that Tom Oakley had about the big-wig political father-in-law that might influence things. They talked about how a judge would look more favorably and see it as more important that there was an absence of physical corroborating evidence. And the state says, well, all of these things support Judge Lowley. When I look at these things and I ask myself, would the defendant have waived his right to trial by jury if the bad advice had not been given and these things had been talked about? And my answer to that is, I don't know. I don't know. But one thing that I'm relatively certain that if you look at this record, it belies the idea or notion that it's not reasonable to conclude that it is probable that Tom Oakley would have gone to trial by jury in the absence of the advice that directed him and urged him to waive a jury in order to employ the strategy of defense counsel. Well, he did directly testify that he would not have waived jury. And he also directly testified to it. So to that extent, I use the word that Judge Lowley basically had to define that these other things were important. But really, when it comes down to it, it's the test. It's the test. And you apply it in this context and you ask yourself, is it reasonably probable that he would have gone to trial by jury? And I submit to you it comes down to this. Following the Strickland standard, do the three of you feel confident on this record and these briefs at the end of the day, are you confident that you can say, this man would have surrendered his treasured right to trial by jury if he hadn't been misled by his lawyer? That's the test that we have in this case. That's the test that must be followed in this case and applied in this case. And if you are confident that Tom Oakley surrendered his right to trial by jury under circumstances that he would have probably done it anyway, then he loses. Well, I guess at this point, though, the trial judge determined from the evidence that he would have or that there was not a reasonable probability that he wouldn't have waived jury anyway. And so, and I think you even expressed in your brief, the standards manifest way to the evidence. It is. So the question is, is an opposite conclusion clearly apparent from the record? Right. That's right. We don't just re-weigh it, right? It's very hard to say it another way. Is it evident that he got it wrong? And I would submit, if you look at how Reardon performed the trial and how important this was to him, how clearly this was the total defense, how on the day that Tom Oakley and he drove down to waive the right and him to file the Bill of Particulars, they talked about this very reason for doing it again. That's part of his testimony. It is clear from this evidence that the bad advice was the driving force for the surrender of the right to trial by jury. And then there's a second issue in this case. There's a spin-off issue. And that is, with this kind of advice being given, can it be said that Thomas Oakley understandingly waived this right? I've cited to you the case of People v. Smith. I would submit to you that that case is directly in point, even though the state seems to call it misplaced. There, a lawyer gave his client bad advice. He said, the judge and I are real good friends. He told his client that the judge would tend to rule differently than the jury would on the evidence in the case. And he said, for that reason, you ought to waive your right to trial by jury. It's very comparable to the situation we have here. And there, Judge Prosser held that where a defendant is misled by his attorney with bad advice, the question becomes whether or not he understandingly, voluntarily, and intelligently waived his right to trial by jury. I would submit on that front, on a due process front, the defendant has made a good showing and should be awarded a new trial for a violation of a constitutional right. Are there any questions? I don't believe so. Thank you. Thank you, counsel. Counsel? Good afternoon. May it please the Court, Judge Keene. Well, I'll cut right to the chase because I think Judge Keene and I agree on a lot of things. We disagree on one important point, and that's really what's the central focus of the argument today, I think. Defense counsel's defense is not defensible. There's all those words out there. His premise was that he could lock the state into this time period of three months, although there's ample authority that the state can prove anything that occurs within the statute of limitations period. He believed erroneously that the federal particulars was a self-executing document. I mean, there was no bill of particulars. He filed a motion for a bill of particulars. Motion for a bill of particulars. It might have been different if he had called it for hearing and an order would have been entered. One of the issues is the post-trial motion by new counsel, correct. But I think what we have here is we've got ample grounds for everyone to agree that trial counsel didn't really have a good defense. You have ample grounds in the trial record to draw that conclusion. Okay. Now, if it sounds like I'm conceding a lot, I'm really not because we have to look at exactly what this appeal involves and what this case involves and what the defendant's post-conviction petition involves. Appellate counsel raised several issues on appeal, the copy of the Rule 23 order as an appendix to the state's brief, and the issue of ineffective assistance to counsel was not raised. So what we have here is an issue that counsel was ineffective in the choice of defense strategy, and I think we can all agree on that. The issue in this case, though, is, well, before I get to that, I think we can also come to the conclusion that waiver principles would apply with respect to the issue of ineffective assistance to counsel as it relates to the representation of the defendant at trial, whether it's bench trial or jury trial or whatever. And that really is the point here. What we have is a claim of ineffective assistance to counsel as relates to advising the defendant, not about defense strategy, but advising the defendant whether to waive a jury trial. And what's happening here, at least from the state's perspective, is an attempt to, in fact, recapture that which has been lost, and that is an argument that trial counsel's defense strategy was ineffective. Now, there's no claim in the postconviction petition at all about, you know, the defense trial strategy being flawed. Correct. I mean, given it's part of the whole argument, but I mean, the focus here is on whether or not incompetent defense counsel caused him to waive his right to jury trial. Right. That's the allegation. Okay. So, I mean, you know. I agree. I agree. And the basis of the claim of ineffective assistance to counsel resides in the defense theory. It has to, because that is what's been argued over and over again in the briefs since today. But couldn't he have, even in the postconviction petition, what if he had just started off and said, I know I've waived any claim about the strategy, but what I'm raising now is why did I do that? It's true, isn't it? There's nothing in the trial record. There wouldn't be anything in the trial record as to what his attorney advised him that led to him waiving. Correct. I agree with everything that you're saying. But what I need to add to that is that you have to look at what a claim of ineffective assistance to counsel as it relates to the decision whether to waive a jury and go to a bench trial is a particular species of ineffective assistance to counsel, because it relates to the character and nature of the advice that defense counsel is giving to the defendant whether to waive a constitutional right. Okay? I'm not saying that there's never going to be a circumstance, perhaps, that a trial strategy might weave into that consideration. What I'm arguing here is that you don't have that. Because when you look at what the prejudice problem is, for the strictness of it, okay, there's a reasonable likelihood the defendant would not have waived his jury right in the absence of alleged error. Now, Your Honor, I noticed that you pointed out that, well, he testified that if he had known about this bad defense strategy, he wouldn't have waived the jury trial. There's a couple problems with that, because that was a strategy no matter what was going to happen, number one. Well, did he testify that had he known that it was a bad strategy, he wouldn't have, or did he testify that he wouldn't have waived it had his attorney not been telling him all these things? You understand what I'm saying? I understand what you're saying, but I'm not sure there's a distinction to be made there. Because what we can agree upon is that his counsel was telling him behind the defense strategy. We can agree upon that there was a belief that the employment of that strategy would be enhanced through going before a judge rather than before a juror, okay? But the overall motivation here to do that starts with the premise that the defense theory itself is no good. In other words, in order to prove an ineffective assistance of counsel as it relates to waiver, it's not enough to say that he told me a bad theory and that a judge would be better off hearing it and, therefore, my rights have been violated. Well, defense attorneys tell their clients all the time a judge is more inclined to consider a defense better than a jury. That plays into one of the many things that goes on between a client and a defendant. So to simply say that it wasn't a good defense doesn't change the nature of the relationship with regards to advising whether to waive because there's going to be that defense one way or the other. Here's my point. When you look at the prejudice problem, it says that the reasonable likelihood the defendant would not have There's some discussion in the defendant's reply brief about criticizing the state's sort of analogizing jury waivers and trial waivers with guilty pleas. But in the case of People v. Maxwell, which is a jury waiver case, it's sites of approval to Hill v. Lockhart, which the state relies upon in discussing the prejudice problem in a trial waiver and a jury trial waiver and a guilty plea case. And in a guilty plea case, there's a reasonable probability that Maxwell would defend his error. The defendant would not have to be guilty. Now, what all this means is that when we talk about this species of ineffective assistance of counsel in jury waivers, there is what I call a causal relationship between the advice given and the defendant's ultimate decision whether or not to waive a jury trial. And I think that is the problem we have here. We all agree that it's bad advice in terms of what the defense is going to be. It's not reasonable to say that because of that advice, because of that advice itself, he waived jury trial. In other words, the flawed defense theory had no relationship with regards to whether or not to waive jury or not. It was whether or not a judge would be more amenable to that defense than the jury would be. Okay. Isn't there an inherent part of this advice that a jury be waived? Isn't there a necessary inherent part of waiving this constitutional right? And it seems to me the logical conclusion of your argument is that you could never make a case for an uninformed or a frequent violation as far as waiver of a jury. No. I believe that there are certainly going to be situations where an attorney can advise a client incorrectly about what the decision to waive a jury would be that would be able to easily satisfy the prejudice problem. I'll just throw out there. Yeah, let's hear one. Okay. A defendant and his attorney get together and they say, okay, what we have here is the state's got a lot of photographic evidence. A jury would consider that photographic evidence to be very damaging evidence of your guilt. But judges, in my view, have never tended to look at photographic evidence. Judges don't place the same weight on photographic evidence as they would on other pieces of evidence that the state would introduce at trial. The defendant says, oh, gosh, great. Well, I want a bench trial because a judge is going to be looking at evidence from a different character standpoint than a jury. You understand the causal relationship that occurs there. What's the causal relationship in this case? Isn't the difference between the example you just gave us and the case we have before us is that that advice and a major component of that advice is based on an error of law as opposed to I've been practicing for 20 years and I've tried jury cases and bench trials. And a judge, in my opinion, from my experience, a judge is going to look differently at this than a jury is. That's an evaluation opinion as opposed to putting forth to the client, to the defendant, a theory that's based on an error of law. Let me, I'm sorry. I'm going to add, Karen, it seems to me like the hypothetical example you gave is what we have here because it's Well, it's the same thing because, you know, what you just said is that he's saying a judge would look, would weigh the evidence differently and what he was told here is that, you know, they're going to produce the same evidence, but a judge is better at being able to exclude what he's not supposed to consider. I don't agree. I think what the defense counsel is saying here is that here's our defense. But a jury is not going to be swayed by emotional distractions. It's going to focus on the legal aspects of this defense that, you know, in other words, a judge is better equipped to, you know, process his defense than a jury. I think that's categorically different than telling a defendant the judge is not going to, is going to place a completely different weight on evidence than when we all know it's completely false. In other words, what I'm saying is that if he tells the client it's a matter of law, judges are not going to look at photographs the same way that a jury would. I mean, I think we've created, that's erroneous advice. The proximate result of that causes the defendant to waive jury trial. Look, you have to have an error, okay, and you have to have the prejudice problem in the Strickland test. And what I'm trying to think is to reduce for the court is that this error has nothing to do with the guilty plea. This error has to do with the representation of the defendant as a defense at trial. So it wasn't, it's not true to say that this bad defense motivated the defendant to waive the jury because that bad defense is going to be there anyway. What motivated the defendant's waive was being told that I can make this defense better than before a judge and I would before a jury. So how is that error affecting the decision process? I know it sounds like I'm splitting hairs, but I'm really not. You're really parsing this, I understand. But I have to because there is no doubt a difference between an error as it relates to represent. A waiver could be knowing and voluntary and perfectly valid even if the defense itself is horrible. It has no basis in law. I don't think that there could be any dispute of that particular legal notion. And if you could accept the fact that you could knowingly and voluntarily waive something, and that's where I would sort of integrate the second issue the defendant raises here. If we can agree that you can knowingly give up a right to a jury trial and go before a bench, similarly disarmed because your defense is no good, it doesn't make that jury waiver any less annoying or voluntary than it was at the get-go. If it's a really good issue that this attorney was ineffective, we ought to just reverse the conviction. All right, because of that. But how does it relate to the decision whether to waive jury? If you're going to hold that an attorney's bad defense and the defendant being told, my bad defense is going to be better in front of a judge than a jury, somehow equal to basically giving the defendant bad advice about what a jury trial entails, I think you're going to be really expanding the breadth of the law as it relates to ineffective assistance of counsel and waiving of jury trials. That's why I emphasize it's a species of ineffectiveness. It's not a subset, if you will, of the broader argument that defense counsel is ineffective. I'm sure Judge Keene is going to get up there and pound the podium and tell me how full of it I am, but I mean that's really the point that has to be made here. And let me just say again, I understand your argument, and you're a smart lawyer, and you're able to parse that, but Thomas Oakley, it's all part of the same package to him, you know, and if it induces him to give up his constitutional right to a jury trial, you know, he's not parsing between, oh, wait a minute, he sold me on this really bad defense, but, you know, I realize that wouldn't have worked with the jury either. But he's waived his right to a jury trial. Well, he waived his right to a jury trial under a lot of circumstances. I mean, I don't think that that alone gets you from point A to point B. You have to show, under this prejudice problem, a causal relationship between the decision to waive and the error. But the error didn't cause the waiver. The error only caused you to make a decision in furtherance of the error. It's going to be there no matter what happens, whether it goes to a jury trial or a bench trial. You're sort of skipping one step to get to this. But the evidence is that the lawyer told him, waive jury because we're going to assert this what turns out to be bad defense. That's why I'm telling you, you ought to waive because, you know, I'm going to assert this really great defense that we found out later is not going to work. I'm not sure that's a fair characterization. I think he's saying, I'm going to assert this. I'm going to change what you said around, but it makes a big difference. Move the shell, if you will. I'm going to assert this defense. But I think a judge is going to be better equipped to hear it than a jury. And that's why you should waive. And that's why you should waive. But the waiver has nothing to do with the defense. It has everything to do with how many use that defense. It doesn't render the advice to waive jury ineffective. Just because a lawyer is wrong in the defense, he's wrong in the defense no matter how you look at this case. We may have to continue this discussion. Right? Okay. Let me just add this. This is not the only argument out there, of course, and the court alluded to it a little bit, that there are evidence in the record, and that's what the judge ultimately relied upon with regards to the prejudice bond, that, you know, there was discussions made about whether a jury would be more sympathetic, and it would make more sense for a judge to hear it because of the character of the crime. Evidence with regards to some concerns about political beliefs. I would note in that regard, the felony affidavit, he said that he would not have waived jury because he believed that a judge would have been influenced politically. By the time we got to the hearing, it flip-flopped, and now I agree that at the time when we discussed whether to waive, we didn't want a jury because a jury might be influenced by the victim's family's political beliefs. So it's a no-win proposition. Either way you look at it, he's got grounds to say that the policy was going to influence the decision. But certainly that has got to weigh a little bit on the credibility of the argument that it wouldn't have waived before. So again, yes, manifest weight, and that's certainly a consideration. I get in love with my legal arguments and perhaps sometimes lose the forest for the trees. But I would ask this Court to at least bear these arguments in mind with regards to, I think it's a very important point, what are we going to say constitutes the realm of prejudice in waivers of jury trial? Is it dependent upon the defense and then telling someone whether it's going to be good to go with that defense? Or does it depend upon what we're telling the defendant in relationship to what advantage you have the bench versus the jury that is dependent upon some unique characteristic of the jury that doesn't depend on the defense, but it depends upon an incorrect perception of what a judge would do versus what a jury is? And yes, I'm splitting hairs, but the point of the matter is it all comes down to causal relationship and motive. And the motivation was not, I'm going to make this defense or otherwise I won't. In front of a judge, I won't do it in front of a jury. The motivation is, I got a defense, which we all agree is horrible.  Don't let the defendant get away with what they've waived twice, and that is ineffective assistance of counsel for a bad trial strategy. There's no resurrecting, and this should not be the way to do it. Thank you. Thank you, Counsel. Counsel? Your Honors, I say this in all sincerity, I have a great deal of respect for Mr. Daly, and sometimes I get the feeling he's much smarter than I am. But listening to this argument, he has carried it out there and not focused on what I think the real issue is, and I want to bring it back to this, was the package of what was told the defendant and urged the defendant to waive tied together between a bad thought on his lawyer's mind and advice that he gave to waive a treasured right to trial by jury based on that bad advice. It's a package. Now, the issue of prejudice is not what would have happened at the event of trial, but I want to talk about some of these other things that they think, well, he might have waived on those, even though there's a reasonable probability that he wouldn't have. For example, the absence of physical evidence would be more compelling to a judge than a jury. Come on. That in itself was bad advice. When you don't have DNA evidence on a mattress where sex was supposed to have taken place without a condom 200 times, a judge can overlook that because he knows there aren't fingerprints in burglary cases, there aren't blood splatters in murder cases, but a jury, that's compelling evidence. It's silly to say, oh, a judge would think that would be more important to a judge. And how about a bigwig political, democratic political father-in-law? Boy, that father-in-law might go out in the whole panel and we don't even get to question him and they'll all be prejudiced by him. My God, if he is a big political wig, you want to go to trial in front of a democratic judge that has to stand retention? Come on. Let's get commonsensical about this, what happened to Tom Oakley. I think Judge Goldenhurst hit it on the head. The basic argument here that's being made is, yes, jury trials are waived all the time on the advice of counsel that proves to be imprudent and unsound. And I even mentioned to her the subterranean joke among the defense bar that waiving a jury trial in a child sex offense case is an elongated plea. But that's not what is at issue here. It is not strategically unsound advice that's being tested here, Judge Goldenhurst. It's legally unsound advice. He was told to waive this jury because it would help make an illegal, misconceived strategy work. If you want this to work, if you want to win, you need to waive a jury. That's why he waived the jury, he didn't waive it because the father-in-law is a big wig. Or the jurors are emotional. Or at least there's a reasonable probability to believe that's why he did it. And I think that's where Judge Lowley got it wrong. Manifestly wrong. Because there's nothing in this record to support the conclusion that he would have waived a jury without what he was urged to waive a jury for. Thank you. Thank you, counsel. We appreciate the briefs and arguments of all counsel. We'll take the matter under advisement. The court will be in a short discussion and resume oral argument.